IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK16-41396 |
| WADE BRANDON HILL and | ) | |
| KIMBERLY DAWN HILL, | ) | CHAPTER 7 |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held on March 7, 2018, on the Chapter 7 Trustee's motion to determine amount of secured claim (Fil. No. 231) and objection by AG-Land Aviation, Inc. (Fil. No. 268). Zachary Lutz-Priefert appeared for the debtors, Tawna Holmstedt appeared for AG-Land Aviation, Philip Kelly appeared as the Chapter 7 Trustee, James Overcash appeared for the Chapter 7 Trustee, Douglas Quinn appeared for Hansen's Petroleum Products, Michael D. Samuelson appeared for Adams Bank & Trust and Great Western Enterprises, Inc., and George Vinton appeared for various creditors.

Two creditors each claim a first-priority security interest in crop proceeds held by the bankruptcy trustee. The Trustee requests an order determining that Adams Bank & Trust has priority over AG-Land Aviation, and giving him permission to disburse the funds accordingly. AG-Land objects, asserting that its agricultural input lien has priority and notice of the lien is not statutorily required for perfection. This is a request to determine the priority of liens, which normally would be handled as an adversary proceeding, but at the hearing the parties consented to submit it as a contested matter. The two creditors submitted post-hearing briefs and a stipulation of facts, and the matter is now ready for decision.

For the reasons stated below, Adams Bank & Trust holds a prior perfected security interest in the crop proceeds at issue.

The two creditors agree on only the most basic facts:

1. Included in the assets of the estate were certain crops that have now been liquidated by the Trustee. The Trustee has received a check for crop proceeds in the amount of $47,695.53.

2. The payees listed on the check include Wade Hill, AG-Land Aviation, Inc., and Farm Service Agency.

3. Adams Bank & Trust and AG-Land Aviation, Inc., both claim a first-priority security interest in the crop proceeds.

4. Adams Bank & Trust has filed a proof of claim in this case at Claim No. 29.

5. AG-Land Aviation, Inc. has filed a proof of claim in this case at Claim No. 34.

According to the Trustee, the check was negotiated by consent of the payees and the Trustee is holding $9,000 pending direction from the court on its disbursement. AG-Land seeks $8,413.64 of that amount, with the balance of $586.36 to go to Adams Bank.

AG-Land's claim is based on its "[g]round application of pesticides/fertilizer & sale of seed treatment, pesticides & fertilizer for 2017 growing crops,"[1] which is covered by the agricultural inputs lien provisions under Neb. Rev. Stat. Ann. §§ 52-1401 to -1411 (West). An agricultural production input lien attaches to "[t]he existing crops upon the land where a furnished agricultural chemical was applied or, if crops are not planted, the next production crop where a furnished agricultural chemical was applied within sixteen months following the last date on which the agricultural chemical was applied." Neb. Rev. Stat. Ann. § 52-1406(1)(a) (West). It attaches when the agricultural production input is furnished by the supplier to the purchaser. Neb. Rev. Stat. Ann. § 52-1406(2) (West).

Under Nebraska law, statutory liens such as that asserted by AG-Land fall within the perfection requirements of U.C.C. Article 9. An agricultural lien is an interest in farm products:

> (A) which secures payment or performance of an obligation for:
>     (i) goods or services furnished in connection with a debtor's farming operation; or
>     (ii) rent on real property leased by a debtor in connection with its farming operation;
> (B) which is created by statute in favor of a person that:
>     (i) in the ordinary course of its business furnished goods or services to a debtor in connection with a debtor's farming operation; or
>     (ii) leased real property to a debtor in connection with the debtor's farming operation; and
> (C) whose effectiveness does not depend on the person's possession of the personal property.
>
> The term also includes every lien created under sections 52-202, 52-501, 52-701, 52-901, 52-1101, 52-1201, 54-201, and 54-208, Reissue Revised Statutes of Nebraska, and Chapter 52, article 14, Reissue Revised Statutes of Nebraska.

Neb. U.C.C. § 9-102 (West).

---

[1] An agricultural chemical is "a fertilizer or agricultural chemical which is applied to crops or land which is used for the raising of crops," and an agricultural production input is "any agricultural chemical, feed, seed, petroleum product, electricity, or labor used in preparing the land for planting, cultivating, growing, producing, harvesting, drying, and storing crops or crop products or for feeding, producing, or delivering livestock." Neb. Rev. Stat. Ann. § 52-1401(1) and (10) (West).

The statutory language contained in each of the lien statutes mentioned above provides that the liens filed pursuant thereto "shall be treated in all respects as an agricultural lien as provided in article 9, Uniform Commercial Code, and may be enforced in the manner and form provided for the enforcement of secured transactions as provided in article 9, Uniform Commercial Code." Neb. Rev. Stat. Ann. § 52-1407 (West).

A financing statement must be filed to perfect an agricultural lien. Neb. U.C.C. § 9-310(a) (West). The financing statement to perfect an agricultural production input lien must contain certain information[2] concerning the identities of the supplier, purchaser, and lender, a description of the real estate where the crops are grown, the description and cost of the input, and the date of the transaction. Neb. Rev. Stat. Ann. § 52-1407(1) (West). It must be filed within three months after the last date that the agricultural production input was furnished, and perfection occurs as of the date the financing statement is filed. *Id.*

When there are conflicting perfected security interests and agricultural liens in the same collateral, they are ranked according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected. Neb. U.C.C. § 9-322(a)(1) (West). The time of perfection in collateral also is the time of perfection in proceeds. Neb. U.C.C. § 9-322(b)(1) (West).

AG-Land filed a U.C.C. financing statement with the Nebraska Secretary of State on October 12, 2017, which contained the purchaser's name and address, AG-Land's name and address, a

---

[2]Specifically, the filing statement or an attachment thereto shall include:

(a) The name and business address of any lender;
(b) The name, address, and signature of the supplier claiming the lien;
(c) A description and the date or anticipated date or dates of the transaction or transactions and the retail cost or anticipated costs of the agricultural production input;
(d) The name, residential address, and signature of the person to whom the agricultural production input was furnished or is to be furnished;
(e) The name and residential address of the owner and a description of the real estate sufficient to identify the same where the crops to which the lien attaches are growing or are to be grown or, if livestock, the name and residential address of the owner of the livestock, the location where the livestock will be raised, and a description of the livestock;
(f) A statement that the products and proceeds of the crops or livestock are covered by the agricultural input lien;
(g) The social security number or federal tax identification number of the person to whom the agricultural production input was furnished, if known; and
(h) The social security number or federal tax identification number of the supplier claiming the lien.

Neb. Rev. Stat. Ann. §§ 52-1407(1) and -1402(2) (West).

-3-

collateral description of "all planted and growing crops. All acres are located in Keith County, Nebraska, " and a check box designating it as an agricultural lien was marked. The U.C.C. financing statement also included an attachment for statutory agricultural liens, with a box checked for "fertilizer/ag chemical" lien, a statement of the amount due as of October 9, 2017, and the legal description of the land where the crops were grown. The financing statement did not include the name and address of any lender, the dates of the transaction(s), a signature of the person to whom the inputs were furnished, or the supplier's tax identification number. By omitting this information, AG-Land did not follow the statutory requirements for perfection of its lien.

"An agricultural production input lien that is not perfected has the priority of an unperfected security interest under section 9-322, Uniform Commercial Code." Neb. Rev. Stat. Ann. § 52-1407(2) (West). Under § 9-322(a)(2) and (3), a perfected security interest has priority over a conflicting unperfected security interest or agricultural lien, and the first security interest or agricultural lien to attach or become effective has priority if conflicting security interests and agricultural liens are unperfected.

In this case, Adams Bank & Trust has had a perfected lien on the debtors' assets, including crops and crop proceeds, since 2010 by virtue of U.C.C. financing statements, effective financing statements, and continuation statements filed with the Nebraska Secretary of State. Perfection is the process a creditor uses to establish its priority relative to other creditors in the same collateral by giving notice of its interest. *Stockman Bank of Montana v. Mon-Kota, Inc.*, 180 P.3d 1125, 1137 (Mont. 2008). Adams Bank & Trust's prior perfected security interest takes ahead of AG-Land Aviation's unperfected lien in the proceeds of the 2017 crop.[3]

AG-Land raises some alternative arguments to get around the U.C.C. outcome. First, it argues under the law of negotiable instruments that because Adams Bank & Trust was not a named

---

[3] In its brief, Adams Bank raised the issue of a lien-notification statement which agricultural production input suppliers often provide to lenders pursuant to Neb. Rev. Stat. Ann. § 52-1402 (West). Upon receipt of such a statement, the lender may commit to paying the supplier, thereby supplanting the supplier's lien, or may refuse such a commitment, in which case the rights of the lender and the supplier are not affected by the agricultural production lien statutes and any prior perfected lien of the lender under the U.C.C. retains its established priority. Neb. Rev. Stat. Ann. § 52-1404 (West). AG-Land did not supply such a statement to Adams Bank.

In light of the finding that Adams Bank's interest has priority over AG-Land's lien, it is not necessary to address this issue in detail. It is worth noting, however, that the language in § 52-1402 is permissive ("may notify a lender") rather than mandatory, as it is in some states. *See, e.g.,* Minn. Stat. Ann. § 514.964 subd. 3(b) (West) ("A supplier shall notify a lender of a crop production input lien by providing a lien-notification statement to the lender[.]"). Nevertheless, by providing such notification, the supplier may improve its chances of getting paid.

payee on the check, AG-Land should be considered a holder in due course who takes priority over an earlier security interest. *See* Neb. U.C.C. §§ 3-302, 3-306, and 9-331 (West).

This argument is inapplicable for two reasons. A negotiable instrument is a promise or order to pay a fixed amount of money. Neb. U.C.C. § 3-104(a) (West). A check is an example of a negotiable instrument. Money, as in the check proceeds in the hands of the bankruptcy trustee, is not subject to the U.C.C. law on negotiable instruments. Neb. U.C.C. § 3-102(a) (West).

Moreover, under the Nebraska U.C.C.,

> a holder in due course means the holder takes an instrument (1) for value, (2) in good faith, (3) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (4) without notice that the instrument contains an unauthorized signature or has been altered, (5) without notice of any claim to the instrument described in Neb. U.C.C. § 3-306 (Reissue 2001), and (6) without notice that any party has a defense or claim in recoupment described in Neb. U.C.C. § 3-305(a) (Reissue 2001).

*Walker v. Probandt*, 902 N.W.2d 468, 481 (Neb. Ct. App. 2017) (citing Neb. U.C.C. § 3-302 (West)).

As Adams Bank points out, AG-Land was aware of the bank's claim to the crop proceeds before AG-Land endorsed the check, because of negotiations with counsel for the Trustee over the distribution of proceeds. AG-Land did not take the instrument in good faith and without notice of another claim.

AG-Land also asserts that it should be treated with the same priority as a purchase-money security interest in the proceeds because the debtors could not have produced the crop without the chemicals provided on credit by AG-Land. Section 9-103 of the Nebraska U.C.C. covers purchase-money security interests:

> (a) In this section:
> (1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and
> (2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
> (b) A security interest in goods is a purchase-money security interest:
> (1) to the extent that the goods are purchase-money collateral with respect to that security interest;
> . . .

  (f) A purchase-money security interest does not lose its status as such, even if:
    (1) the purchase-money collateral also secures an obligation that is not a purchase-money obligation;
    (2) collateral that is not purchase-money collateral also secures the purchase-money obligation; or
    (3) the purchase-money obligation has been renewed, refinanced, consolidated, or restructured.
  (g) A secured party claiming a purchase-money security interest has the burden of establishing the extent to which the security interest is a purchase-money security interest.

Neb. U.C.C. § 9-103 (West).

  Regardless of the accommodations made for holders of purchase-money security interests, the security interest must nevertheless be perfected. As noted above, AG-Land did not properly perfect its interest, so it cannot bootstrap itself into a greater position by claiming a purchase-money security interest.

  While AG-Land is a small company and appears to have made a good-faith effort to protect its right to payment for the products and services it provided to the debtors, it did not adequately perfect its statutory lien. The statutes are clear on what an agricultural products input supplier is required to do to protect itself, and when those requirements are not met, the supplier's ability to receive payment falls behind other creditors who properly perfected their security interests. Accordingly, Adams Bank & Trust is entitled to the crop proceeds currently held by the Chapter 7 Trustee.

  IT IS ORDERED: The Chapter 7 Trustee's motion to determine amount of secured claim (Fil. No. 231) is granted. Adams Bank & Trust holds a prior perfected security interest in the crop proceeds.

  DATED: April 17, 2018.

                BY THE COURT:

                /s/ Thomas L. Saladino
                Chief Judge

Notice given by the Court to:
  *Philip Kelly  Zachary Lutz-Priefert
  Tawna Holmstedt  James Overcash
  Douglas Quinn  Michael D. Samuelson
  George Vinton  United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.